Our wonderful clerk may have already advised you, but we're going to hear a case in which Judge Lynch and Judge Droney and I will hear argument, Judge Droney participating from Connecticut. Then we will recess. Those of you who haven't had the opportunity to check in will have plenty of time to do that. And the panel assigned for today in the regular course, Judge LaValle, Judge Chin and I will come back on the bench. So, that said, let us begin with argument in Linares v. Annucci. Good morning, Ms. McGlynn. Give us just a moment. Let me check. Judge Droney, can you hear us all right? I can. Good morning. Good morning. Ms. McGlynn. May it please the court, my name is Megan McGlynn and I represent Mr. Jorge Linares. In 2011, the New York State Legislature enacted a sweeping overhaul of its parole regime in order to achieve one clear goal, the rationalization and modernization of parole release decision making. Among other systemic changes, it required the implementation of an empirically verified risk and needs assessment instrument and it mandated that the Board of Parole use risk and needs principles to objectively measure the rehabilitation and risk of recidivism of those seeking release. Did it mandate that anyone be released under any particular set of circumstances? No. So, to be clear, the parole statute cabins the discretion of the parole board such that prisoners must be given reasons for the denial of parole, which is all that due process requires here, an opportunity to be heard and reasons for the denial. So, under this statute, if a prisoner shows rehabilitation and can prove that he satisfies the standard set out in 259I2CA, then the Board of Parole should at least provide reasons before denying it. And where does it say that in the statute? In 259C4, the statute reads that written procedures shall incorporate risk and needs principles to measure rehabilitation. Where does it say that there is a requirement of a statement of reasons? So, that statement of reasons is a due process requirement. So, again, where does the liberty interest come from if there is not any more after 2011 than there was before a statement that under certain set conditions, prisoners have an entitlement to release? So, under the standard set forth in Allen, a state statute creates an expectancy of release that triggers the due process clause when it cabins the discretion of the parole board such that release is required when certain conditions are met. Yes, and I'm asking you, where in the new statute is there any requirement that prisoners be released if certain conditions are met? You have this both in section 259I2CA, which says that discretionary release shall not be granted as a reward, but if the inmate will live... Well, first of all, it says discretionary release, right? Correct. And secondly, it says it shall not be granted as a reward for performance, which seems to me to say it is not to be given simply because some kind of condition is met about performance, but only when in the board's judgment certain generalized criteria are applied, which include an assessment of future safety, but also include things like not denigrating the seriousness of the offense, correct? To break the... Is that correct? Yes, it is. And is that not the exact same language and the exact same set of conditions that was in the pre-2011 statute that led this court to conclude that the Allen test was not met in New York? The first sentence in 259I2CA has not been changed by the 2011... And is not that first sentence the determinant sentence that explains what the criteria for parole release are and have been? We do not believe so. And the reason why is because under 259I2CA there's an explicit cross-reference to 259C4. And it's in 259C4 that we see the addition of risk and needs principles. Yes, but this says in applying that first piece about future safety, whether the person is rehabilitated, whether it's safe to release him and so on, there should be the use of a certain kind of objective tool, right? Correct. But does that say anything? The very specific tool that the board has adopted, COMPAS, doesn't have like a passing grade, does it? No. It does not say, we give you a score, and if you rate score X, you're safe to release. It doesn't do that, right? No. So where is the requirement in the new statute that the board not just refer to an objective tool, but if certain standards are met, actually release anybody? So we believe that you get the presumption from two places. First, risk and needs principles is a term of art that means that incarceration should be reserved only for those prisoners who have shown continued needs for rehabilitation and a risk of recidivism. Ah, but doesn't the statute specifically say something else than that? It says not that parole is to be determined solely by whether someone is safe to release into the community, but also whether it's in the general interest of society to release the prisoner and whether releasing the prisoner would unduly denigrate the seriousness of the offense. So to be sure that the parole board still has discretion under the statute for all the reasons you've just articulated because... I'm saying that by invoking the risk and needs assessment, the legislature is saying that's all that matters, but it's actually saying the opposite, is it not? That it's not all that matters. So absolutely a risk and needs assessment instrument is not the be all and end all of a parole determination because of the standard that you pointed to in ITCA. However, we argue that discretionary, that the idea that there is still discretion to assess other prongs of the standard does not thwart the finding of a liberty interest. In fact, the discretion... If we said before that that first sentence determines that there is not a liberty interest in New York, why does the instruction to use a certain kind of methodology in assessing one of the prongs create a liberty interest that was not there before? Because it further cabins the discretion of the parole board in a way that makes clear that when prisoners have shown rehabilitation, the board cannot simply deny without giving reasons why that rehabilitation was not enough. Can I ask a different sort of question? Your argument on appeal, as we've just heard, rests heavily on the idea that this risk and needs assessment is a piece of the puzzle that really dictates how things go. Mr. Linares' original complaint I read as kind of an attack on the risk and needs assessment. His complaint says that these very provisions vest the board with standardless and unfettered discretion to grant parole, and that's unconstitutional. The statute is unconstitutional, the very statute that you are relying on. He says in paragraphs 24 and 25 that the standards are too vague to permit the board to apply them fairly consistently and non-arbitrarily. The regulations require the board to predict whether a person will remain law-abiding if released on the parole. This prediction cannot be made rationally, fairly consistently from case to case. Is that your theory? No, it is not. Mr. Linares argued three claims in his complaint. He argued an equal protection claim, a void for vagueness claim, which you've cited, and a due process claim based on the discretion of the board. We are only pressing the due process claim. And actually, in paragraphs 26 and 32 of the complaint, he makes clear that he does argue that the board is making parole release decisions that are, in his words, outside of the jurisdiction of the board by the legislature and the law. And under a pro se status, that has been enough to raise a claim. And in fact, in Robles, this court made clear that this sort of language is sufficient at least to thwart a 1915 dismissal without granting leave to amend. In Robles, there was an eight-page anecdotal complaint that alleged a breach of contract violation, and the court actually found that because in one paragraph, the plaintiff had suggested that retaliation might have been at play, that that was enough to satisfy the group. Okay, sorry. So, Ms. McGlynn, if we, in your, we'll let you sit down in a few minutes. I think Judge Lynch has at least one more question. But if we go off on the last point that you were talking about and remand it to the district court, at least to give the plaintiff an opportunity to re-plead, should we, if we decide to do that, should we tell the district court anything else? And I say that in the context, I believe, of the state arguing that we shouldn't make any other decisions, but if it goes back to the district court, you guys get to start over and they get to plead if you get them served. I see my time is expiring. Yes, of course, because I asked you a question and I think Judge Lynch has one more as well. So, if this court did choose to vacate the decision and remand, it would be within its discretion to fully remand the case and allow Mr. Linares to press both his liberty interest claim to oppose a motion to dismiss in the ordinary course on that claim and to make out his arbitrary and capricious claim, which the district court acknowledged was a plausible claim that could have been made. Alternatively, this court could determine that there is a liberty interest and remand for a full determination of what processes do Mr. Linares and whether he was denied that process. Judge Lynch? No, I think that covers it. Thank you. Thank you. You've reserved two minutes for rebuttal. Judge Hall, can I ask you, can you hear me? Oh, yeah. Sorry, Judge Droney. Excuse me. Don't leave yet. I just wanted to ask you a question or two and I wanted to ask you what the amended complaint would look like because it seems like it would look very different from the complaint that was initially filed. Is it going to be a complaint that alleges this arbitrary and capricious denial for him alone or is it going to now include an argument that the 2011 amendments created a liberty interest? Because neither one of those is set forth in the original complaint. So he would press both claims and we do argue that he has sufficiently pled them under paragraphs 26 and 32 of the complaint. This court has long recognized that even if there is no liberty interest, that there are still arbitrary and that the due process clause still protects parolees from being denied on arbitrary and capricious grounds. And so if this court did not find a liberty interest, he would want to maintain his ability to challenge an arbitrary and capricious denial. But, of course, he would also- He brought it initially as a class action with two other plaintiffs. So how can we assume that he's now making the arbitrary and capricious claim just for himself, especially since he's got a state action pending raising that very same claim? How do we glean that from the original complaint? This goes to the standard for leave to amend. Under Gomez, the court was clear that unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim, then it should grant leave to amend. And so certainly he did not plead particular facts in this original complaint because he thought he could bring a class action as a non-lawyer. But if he were granted the opportunity to particularize his claim as the court in Alston v. DeBruin found was appropriate, then he would be able to allege facts to make out that claim. And, again, the district court recognized that this was a plausible claim that could have been raised because in footnote 3 of the decision, the district court says that this is a claim that could have been raised but that was not raised. Can you tell me what's going on in his state lawsuit? Was he denied parole and now he's challenging that in the state action? Is that what's happened? Yes. So he was denied, he's been denied parole three times and he is challenging, he's challenging the denials here and he's also challenged a denial on January 19th of 2016 in the state courts. Thank you. Thank you, Ms. McGlynn. You have reserved two minutes for rebuttal. Ms. Nephew. Good morning, Your Honors. Kate Nephew for Amicus. I'd like to thank the court for the opportunity to appear this morning. Thank you for being here. Your Honors, this court's repeatedly held that the executive law of New York doesn't create a liberty interest in discretionary release to parole. And the two sections it's relied on in doing that were, as the court's noted, in the 2011 amendments. 259C says the board has the power to determine who may be released to parole. And 259I sets out the substantive standard which, as Your Honor noted, was not amended. This court's held in Booth and in Barna that those sections commit the ultimate parole release decision to the board's discretion. And since those sections were not changed, there is no reason to overturn those holdings. Can I ask you a question about the regulations? Yes, Your Honor. The principle brief, the original brief for the appellant, cites a proposed regulation. And then in the reply brief, it's represented that that proposal has been adopted. Yes, Your Honor. The status of those is the board voted to adopt the proposed regulation, but with non-substantial changes. But the text has not been published or promulgated yet. I literally have not seen it. The board could still amend before it's promulgated. It's not. According to Westlaw, at least as of yesterday or the day before, they're still showing the old regulation and they're showing it as updated through the most recent, whatever is the equivalent of the Federal Register. New York State Register, yes, Your Honor. Yeah. Yes, Your Honor. And so what is the status of that then? If it's been voted but not promulgated? It's not official yet. It hasn't. It's not. And I don't. I asked the Board of Parole, Your Honor, and they don't have a date when it's going to be published again because it's not official yet. It's not in effect. So if I came up for a parole hearing tomorrow, the board members, if there was some issue about following the regulations, would still be promulgated at some point? Yes, Your Honor. More than that, I'm afraid, I cannot say. It has not been decided yet. Thank you. Your Honors, beyond the changes that the 2011 amendments did make, those did not create a legitimate expectancy of release. They required the board to establish procedures that incorporate  Those principles are supposed to be used in a way that is The statute says to assist the board in making parole release decisions. The principles do not govern the decision. They do not determine the decision. Therefore, there's no presumption of release if there's rehabilitation. Nor could there be. Why change the statutory language from guidelines to procedures unless that had some meaning? It does have meaning, Your Honor, but it doesn't have meaning for the ultimate decision, because the statutory standard has three parts. And the first part is whether there's a likelihood of success upon release. And the board is required to use risk and needs principles in order to, when it's considering that decision. It's not determinative of that decision, but it has to use those principles. But the board still also has to consider whether release is not incompatible with the welfare of society and whether release would so undermine the seriousness of the crime, deprecate the seriousness of the crime as to undermine respect for the law. And particularly the last of those, the respect for the law, that's entirely separate from the question of rehabilitation. And so even if a person is fully rehabilitated, the board could determine that and nevertheless determine that release is not appropriate. And that's been well established. Respect for the law isn't part of being rehabilitated? It's the public's respect for the law, Your Honor. And so the question is whether it would deprecate the public's understanding, undermine the public's understanding of how the justice system treats the seriousness of a particular crime. And so things that are relevant to that are things like how many times has the inmate appeared for parole, the court of appeals has said that things like remorse and insider are significant. All of those things, some of those things are relevant to rehabilitation. Some of them are not. Some of them have to do with the board's expert judgment on what the public's understanding of the law is and also the general welfare of society. And those are separate from rehabilitation. Risk and needs principles can't speak to those. So of course the amendments have meaning, but they are not determinative. They cannot be determinative. In particular, the switch from guidelines to procedures, I'm sure you might have thought that a guideline, at least a guideline for when somebody should be released would more likely create a certain kind of expectation that even an advisory guideline is likely to be followed while procedures are by definition non-substantive. Am I missing something there or is that? Your Honor, I believe that when you read the amendments together with the fact that they may adopt guidelines whereas they may not. And the state courts have held that by considering this compass assessment tool that the board meets its statutory requirements to use risk and need principles. But again, those principles are only to assist in the release decision. And also to assist in setting conditions for parole, right? Yes. I mean the compass instrument also deals with what sort of guidelines are likely to be useful and what are likely to be counterproductive. Yes, Your Honor, precisely. What is the state's position with respect to remanding this for, to allow repleting? Your Honors, as we stated, we don't believe it's necessary because there's no indication in the complaint that plaintiff wanted to bring an individualized action when it's brought as an attempt, a facial challenge to the constitutionality of the statute and the regulations. Plaintiff has two state court proceedings pending at the moment. He has a contempt proceeding based on his New York State Court of Appeals decision and he also has this challenge to his most recent denial of parole which raised on its face a challenge to the constitutionality. Certainly the court could remand but there's nothing in the complaint that indicates that that's what he was raising and that the district court did not. He doesn't even allege that he ever has been denied parole. I gather, of course, he has been and could allege that. Yes. But the complaint just talks about the plaintiffs are all people who either were denied parole or are soon to come up for parole. Yes. And as the court noted, he also doesn't mention the 2011 amendments either. Frankly, Your Honors, one way that the court, if it wished, could dispose of this is to say that the arguments raised on the court below. That's for the court to decide, of course. Your Honors, I just want to note that the court asked about the requirement that reasons be given for the denial of parole. That's already, that's in the current regulation that reasons for denial are to be given in detail and in non-conclusory terms. That already exists. And the, and so to a certain, and so there is no, the claim that in any given case, the reasons aren't detailed enough, that's an individualized claim. That's not a facial challenge. It's not before the court here. It would also seem to be naturally a state claim that the regulations haven't been followed. Yes, precisely. And that is something that is raised in the state courts all the time, Your Honor. Your Honors, unless the court has further questions, we will rest on our brief. Thank you. Ms. McGlynn, you've reserved two minutes for rebuttal. I'd like to begin by briefly discussing the idea of discretion. We do not argue that the statute eradicates all discretion, but the Allen Court made clear that there are two kinds of discretion. One kind in which the parole board has the discretion to parole whomever they wish when it's simply not guided by standards set by authority. And another kind in which it does have to use its judgment in applying standards set by authority. And in the words of Greenhalghz, all parole determinations are going to be inherently subjective and predictive. But we are clearly in the second category of cases where they are guided by standards in the statute. And in fact, in the Nebraska and Montana statutes at issue in Nebraska, it's almost verbatim the language that we are talking about here in 259C4, I apologize, in 259I2CA. In fact, deprecate the seriousness of his crime was verbatim in the Greenhalghz statute, and the court did not find that that was too discretionary to foreclose the finding of a liberty interest. I'd also like to briefly talk about the standard. But in Allen, the statute in Nebraska said that when the board of parole considers release, it shall order his release should be deferred for specific reasons. There's no language like that in the New York statute. That is correct. However, in Allen, the court also said that this is not a magic words inquiry. It said that an if-then or shall-unless, any kind of formula that rests on the particular words used, is not the test that we're applying. And in fact, in Booth, the court specifically said that the shall-unless formula was decisive for the court in Greenhalghz, which is understandable. That was a misinterpretation of the standard because it was prior to Allen when the court clarified that this is not a magic words inquiry. I'd also like to talk briefly about the 1915 issue. This court has been clear that leave to amend is to be granted leniently, because, and which is important, because under 1915G, you cannot simply raise another claim without losing one of your, one of your three strikes to file and form a papyrus. And so it is actually very important that Mr. Allen, whose case is to be remanded, is given an opportunity to amend his complaint, to particularize his claims, both as to the arbitrary and capricious challenge and to his liberty interest challenge. Thank you very much. Well argued, both. It's always a pleasure having both parties, both representatives or sets of representatives here. So thank you. Good luck on exams, if that still applies. And we will reserve decision in this case and we'll stand adjourned.